**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BROTHERHOOD MUTUAL
INSURANCE COMPANY,

               Plaintiff,

v.                             CIVIL ACTION NO.   2:16-cv-00341

BIBLE BAPTIST CHURCH, et al.,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' cross-Motions for Summary Judgment. (ECF Nos. 73, 75, 80.) For the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED**. (ECF No. 80.) Defendants' Motions for Summary Judgment are **GRANTED**. (ECF Nos. 73, 75.) The Court enters declaratory and injunctive relief in the manner set forth below.

*I.    BACKGROUND*

This declaratory judgment action stems from two underlying complaints filed in Kanawha County Circuit Court by A.B., by and through his Guardian ad Litem, William Jesse Forbes, and K.R.L, by and through his parent and next friend, Jocelyn Gail Arbeiter, against Defendants, Bible Baptist Church ("Bible Baptist"), Blue Creek Academy ("BCA"), James Waldeck, and J.R. Thompson.[1]

---

[1] The first case is captioned:  *A.B.. a minor, bv William Jesse Forbes, as his Guardian Ad Litem v. Blue Creek Academy et al.*, Kanawha County Circuit Court No. 15-C-1016.  The second case is captioned:  *K.R.L., by and through his parent and Next Friend, Jocelyn Gail Arbeiter v. Blue Creek Academy et al.*, Kanawha County Circuit Court No. 16-C-950.

*A.  The Underlying Civil Complaints*

Plaintiff Brotherhood Mutual Insurance Company ("Brotherhood Mutual") provides insurance to Defendant Bible Baptist.   Bible Baptist owns the boarding school BCA, which is managed by James Waldeck and run by J.R. Thompson.   Plaintiffs, A.B. and K.R.L., were students at BCA for approximately two years and seventeen months respectively.   (ECF No. 74 at 3–4.)   Both A.B. and K.R.L. allege in separate pending, underlying actions filed in Kanawha County Circuit Court that they were subject to sexual and physical abuse as well as malnourishment and educational neglect.   (*See* ECF Nos. 75-3, 75-4.)   Specifically, A.B. alleges that the following:

> 22. During his two year tenure at BCA, Plaintiff A.B. suffered significant physical and emotional abuse.
>
> 23. BCA subjected A.B. to malnourishment, isolationism, corporal punishment, starvation, and physical abuse.
>
> 24. Plaintiff A.B. was sexually abused by another resident of the facility due to the lack of supervision and other improper standards utilized by the facility.
>
> 30. Aside from the starvation, physical abuse, extreme punishments, and various other maltreatments, BCA also committed educational neglect.

(ECF No. 75-3 at ¶¶ 22–24, 30.)   K.R.L. specifically alleges the following:

> 21. During his seventeen (17) month tenure at BCA, Plaintiff K.R.L. suffered significant physical, sexual, and emotional abuse.
>
> 22. BCA exposed and subjected Plaintiff to malnourishment, isolationism, corporal punishment, starvation, and physical abuse.
>
> 25. Plaintiff K.R.L. was sexually abused by another staff member's son of the facility due to lack of supervision and other improper standards utilized by the facility.

(ECF No. 75-4 at ¶¶ 21–22, 25.)    Both complaints further allege that BCA was negligent in its hiring and supervision of the staff.    In response to the above complaints filed against them, Bible Baptist requests insurance coverage under their Brotherhood Mutual policy.

B.  *Brotherhood Mutual Insurance Policy*

The Brotherhood Mutual policy at issue in this case was in effect from June 13, 2011, to June 13, 2014, and provided coverage for A.B. and K.R.L.'s claims.[2]    Specifically, the policy provides a coverage limit of $1,000,000 per occurrence for Bodily Injury/Property Damage Liability, "Nursery Supervision," and "Nursery Corporal Punishment, with an Aggregate Coverage Limit of $3,000,000.    (*See* ECF No. 32-3 at 6.)    Additionally, there is a separate coverage limit of $100,000 for "Sexual Acts Liability Coverage" with an Aggregate Coverage Limit of $100,000.    (*See id.* at 7.)

The policy defines an occurrence as "an accident and includes repeated exposure to similar conditions."    (*See id.* at 77.)    It further states the following:

> If an occurrence to which any liability coverage of this policy applies consists of acts, errors, omissions, decisions, incidents, events, breaches of duty, damage or loss occurring on more than one date during any policy period or policy periods, such events or damage, together with any related loss, will constitute a single occurrence. . . .

(*Id.* at 100.)    Regarding sexual acts, specifically, the policy states the following:

> Any of the above acts or conduct will be considered a single sexual act if undertaken by the same perpetrator or perpetrators, even if such acts are directed against more than one person, happen over time, or take place during more than one policy period.

---

[2] Initially, Brotherhood Mutual filed this declaratory judgment action stating that its policy did not provide coverage for the claims, alleging that James Waldeck had misrepresented that the church did not have any other facilities, including BCA, which would fall under the policy coverage.    (ECF No. 1.)    After conducting discovery, Brotherhood Mutual conceded that its policy covered BCA, leaving the only matter in dispute the number of occurrences contained in A.B. and K.R.L.'s claims.    (*See* ECF No. 80 at 4.)

(*Id.* at 80.)

C. *Current Motions*

Citing the above definitions, Brotherhood Mutual filed an Amended Complaint on June 9, 2017, seeking a declaration, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that A.B. and K.R.L.'s claims constitute one occurrence under the insurance policy. (*See* ECF No. 70.) Subsequently, Defendants Bible Baptist and A.B. by William Jessie Forbes, together with K.R.L. by Jocelyn Gail Arbeiter, filed motions for summary judgment arguing that A.B. and K.R.L.'s claims count as at least two occurrences under the insurance policy as there were multiple causes for the claims. (*See* ECF Nos. 74, 76.) Brotherhood Mutual filed a cross-motion for summary judgment arguing that A.B. and K.R.L.'s claims count as a singular occurrence under the insurance policy as they stem from the single cause of negligent supervision by BCA. (*See* ECF No. 80.) All three motions have been fully briefed and are now ripe for consideration.

## II. *LEGAL STANDARD*

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *See* Fed. R. Civ. P. 56(e). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

4

The moving party bears the initial burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991). When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990). The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

*III.     DISCUSSION*

Cross-motions for summary judgment are reviewed separately if material facts are in dispute. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Here, the facts underlying Brotherhood Mutual's claim are undisputed—the parties merely dispute the legal significance of those facts. Furthermore, under West Virginia law, "determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Norfolk S. Ry. Co. v. Nat'l Union Fire Ins. of Pittsburg, Pa.*, 999 F. Supp. 2d 906, 910 (S.D. W. Va. 2014). Therefore, as stated above, the only issue in dispute is whether A.B. and K.R.L.'s claims

constitute multiple occurrences under the Brotherhood Mutual insurance policy. Accordingly, summary judgment is proper after determining the number of occurrences under the insurance policy.

A. *Policy Terms Ambiguity*

When considering the question of how many occurrences there are for insurance purposes, the Supreme Court of Appeals of West Virginia has said that the threshold inquiry is first whether the "occurrence clause" of the insurance policy is ambiguous. *See Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 642 (W. Va. 1985). The test for determining whether there is an ambiguity is whether "the language of the policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." *See Prete v. Merchants Prop. Ins. Co. of Ind.*, 223 S.E.2d 441, 443 (W. Va. 1976). Furthermore, the Supreme Court of Appeals has explained that a latent ambiguity "arises when the instrument upon its face appears clear and unambiguous, but there is some collateral matter which makes the meaning uncertain." *See Flanagan v. Stalnaker*, 607 S.E.2d 767, (W. Va. 1976) (citing *Collins v. Treat*, 152 S.E. 205, 206 (W. Va. 1930)). However, the mere fact that the parties disagree on the meaning of an instrument does not automatically render the instrument ambiguous. *See id.* at 770. Lastly, if there is an ambiguity, the court should liberally construe such ambiguities in favor of the insured. *See Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 163 (W. Va. 2003). If ambiguity is not found, then the policy provision should be applied and not construed. *See Tynes v. Supreme Life Ins. Co. of Am.*, 209 S.E.2d 567, 569 (W. Va. 1974).

For example, in *Shamblin*, the insurance policy provided that an occurrence included injuries or damages "arising out of continuous or repeated exposure to substantially the same general conditions." *See* 332 S.E.2d at 643. The Supreme Court of Appeals found that this policy provision was unambiguous. *See id.* at 644. This Court has applied the same reasoning in *Canal Insurance Co. v. Blankenship*, which had a similar policy provision, to find that the provision was unambiguous. *See* 129 F.Supp.2d 950, 953–54 (S.D. W. Va. 2001).

Here, Defendants Bible Baptist argue that the policy provision that defines "occurrence" as including "repeated exposure to similar conditions" is ambiguous. (*See* ECF No. 74 at 14.) Specifically, Defendants argue that "similar conditions" could mean "more than one condition arising from or giving rise to a single instance of sexual assault rather than similar conditions arising from multiple events." (*See id.*) This Court applies the rationale of the Supreme Court of Appeals in *Shamblin* in finding that this type of policy provision is unambiguous. *See* 332 S.E.2d 639, 643–44 (W. Va. 1985). This is especially apparent in light of the provision of the policy that expounds on "repeated exposure to similar conditions" and states the following:

> If an occurrence to which any liability coverage of this policy applies consists of acts, errors, omissions, decisions, incidents, events, breaches of duty, damage or loss occurring on more than one date during any policy period or policy periods, such events or damage, together with any related loss, will constitute a single occurrence . . . .

(ECF No. 32-3 at 100.) Furthermore, the insurance policy defines a "related loss" as "a loss of any kind, or multiple losses, of any kind, arising directly or indirectly out of or in connection with . . . the same or related act(s), error(s), omission(s), decision(s), incident(s), event(s), or breach(es) of duty." (*Id.* at 79.) This is pertinent in this case because a loss includes bodily

injury. (*See id.* at 77.) Lastly, the policy provision expounds on what this means in the context of sexual abuse and states the following:

> Any of the above acts or conduct will be considered a single sexual act if undertaken by the same perpetrator or perpetrators, even if such acts are directed against more than one person, happen over time, or take place during more than one policy period.

(*Id.* at 80.) These provisions, taken together, indicate that the policy intends for similar conditions to mean multiple conditions arising from a single source rather than similar conditions arising from multiple sources. As such, the "occurrence clause" of the Brotherhood Mutual insurance policy is not ambiguous.

### B. *Number of Occurrences Under the Policy Terms*

Once it has been determined whether the instrument is ambiguous, courts have utilized three approaches to determine the number of occurrences under an insurance policy: the effects approach, the cause approach, and the triggering event approach. *See* 64 A.L.R. 4th § 2(a) (1985). The law of the forum state determines which approach applies. *See id.* Courts using the effects approach look at the effects of the accident to determine the number of occurrences. *Id.* at § 3. Contrarily, courts using the cause approach look at the cause or causes of the damage to determine the number of occurrences. *Id.* at § 4. Lastly, courts using the triggering approach look neither at the cause nor effect of the accident, but focus on the act that subjected the insured to liability. *Id.* at § 5.

In *Shamblin*, the Supreme Court of Appeals of West Virginia chose a test similar to the triggering approach and stated, "An occurrence means one event, not several events . . . [t]he cases have consistently construed 'occurrence' or 'accident' in liability policies to mean the event for which the insured becomes liable, not some antecedent cause of the injury." 332

S.E.2d at 644 (quoting *Champion Int'l Corp. v. Cont'l Cas. Co.*, 546 F.2d 502 (2d Cir. 1976) (Newman, J., dissenting)).   In *Shamblin*, there were two negligent acts by two different individuals that resulted in an automobile collision that caused one injury.   *See id.* at 644–65. The court, using the above stated test, found that although there were two negligent acts, there was only one occurrence, the collision, stating that "[t]he term 'occurrence' in a limitation of liability clause within an automobile liability insurance policy refers unmistakably to the resulting event for which the insured becomes liable and not to some antecedent cause(s) of the injury."[3]   *Id.* at 644.

In *Kosnoski v. Rogers*, the Supreme Court of Appeals of West Virginia applied the *Shamblin* test to a case involving a carbon monoxide leak in an apartment building that caused injuries in several different households.   *See* No. 13-0494, 2014 WL 629343, at *1 (W. Va. Feb. 18, 2014).   The insurance policy there defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."   *See id.* The court found that there was only a single occurrence because the event that attached liability was the singular gas leak, not the traveling of the gas to the different apartments.   *See id.* at *3.

Using the test set out in *Shamblin*, the Court will address sexual abuse, physical abuse, malnutrition, and educational neglect claims individually.

    1.   <u>Sexual Abuse Claims</u>

---

[3] The Fifth Circuit recently used a similar test in *Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, stating the following:

> When an occurrence is technically defined to include a series of losses arising from the same event, it includes only those losses proximately caused by that event. . . .Thus, the district court applied the correct legal standard in determining the number of occurrences by analyzing whether the February story was the proximate cause—not just a contributing or but-for cause.

810 F.3d 986, 993–94 (5th Cir. 2016).

Several courts have dealt with the question of whether the sexual abuse of multiple victims constituted a singular or multiple occurrences for insurance policy purposes. In *H.E. Butt Grocery Co. v. National Union Fire Insurance Co.*, a grocery employee was accused of sexually abusing two children in the grocery store on different occasions. *See* 150 F.3d 526, 258 (5th Cir. 1998) (applying Texas law). The court, while acknowledging that the underlying negligent supervision was the but-for cause of the sexual abuse, held that the sexual abuse constituted separate occurrences and stated the following:

> While 'a single occurrence may result in multiple injuries to multiple parties over a period of time . . . [] if one cause is interrupted and replaced by another intervening cause, the chain of causation is broken and more than one occurrence has taken place . . . . Here, it is clear that each child's injuries are independent and caused by the separate acts of sexual abuse.

*Id.* at 534; *See also Soc'y of Roman Catholic Church of Diocese of Lafayette v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1363, 1368 (5th Cir. 1994) (finding that the first molestation of each child constituted a separate occurrence but the repeated molestation of that individual child arose out of the same occurrence as the first molestation); *Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86, 89 (5th Cir. 1993) ("Each and every allegation arises out of the alleged acts of sexual molestation. The claims of negligence are not independent causes-in-fact of the injuries.").

The Seventh Circuit has similarly found that where the tort is negligent supervision, each act of sexual abuse could be a separate occurrence. *See Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101 (7th Cir. 1996). There, the insurance policy defined an occurrence as "an accident or a happening or event or a continuous repeated exposure to conditions which unexpectedly and unintentionally results in personal injury. . . . All such exposure to substantially the same general

conditions existing or emanating from one location shall be deemed one occurrence." *Id.* at

103. The court stated the following:

> But a single negligent act undoubtedly can produce multiple "occurrences" if the injuries are independent—consider the pharmaceutical company that negligently prepares a batch of drugs, injuring many users; or consider the diocese that digs a basement for a cathedral and fails to erect a fence, attracting several children who fall to their deaths.

*See id.* at 104.

However, there is not a uniform approach to this question. Brotherhood Mutual alerts this Court to one such case from the Superior Court of Pennsylvania. *See Gen. Accident Ins. Co. of Am. v. Allen*, 708 A.2d 828 (Pa. Super. Ct. 1998). In that case, the state court, applying the cause approach, held that a mother's repeated negligence in failing to protect her three children from sexual abuse by their stepfather constituted a single occurrence because the defendant's failure to prevent the abuse was "ongoing throughout the period of abuse." *See id.* at 834.

Here, as stated above, A.B.'s and K.R.L.'s underlying complaints allege individual instances of sexual abuse by two different individuals at BCA. (*See* ECF Nos. 75-3, 75-4.) A.B. alleges that he was sexually abused by a fellow resident of the facility. (*See* ECF No. 75-3 at ¶ 24.) K.R.L. alleges that he was sexually abused by a staff member's son. (*See* ECF No. 75-4 at ¶ 25.) Neither A.B. nor K.R.L. allege that there was any connection between their individual sexual assaults other than the broader allegation of negligent supervision by BCA. (*See* ECF No. 76 at 8.)

Brotherhood Mutual, relying on *Kosnoski v. Rogers*, 2014 WL 629343, at *1, argues that A.B.'s and K.R.L.'s sexual abuse allegations, along with their other allegations of malnutrition

and educational neglect, constitute a single occurrence stemming from BCA's negligent supervision. (*See* ECF No. 80 at 6.) Brotherhood Mutual further argues that although the victims and perpetrators are different, the injuries were caused by continuous or repeated exposure to substantially the same general harmful conditions. (*See id.* at 9.)

Conversely, Defendants argue that the events that triggered liability were the acts of sexual abuse and not BCA's negligent supervision. (*See* ECF No. 74 at 12–19; ECF No. 76 at 6–7.) The Defendants rely on *H.E. Butt Grocery Co.*, and similar cases to argue that A.B.'s and K.R.L.'s discrete instances of abuse constitute separate occurrences as the abuse involved two different victims and two different perpetrators. (*See* ECF No. 74 at 18; ECF No. 76 at 8–9.)

This Court agrees with Defendants. First, applying the principles in *Shamblin* and *Kosnoski*, the events that attached liability were the sexual assault of A.B. and the sexual assault of K.R.L. In *Shamblin*, liability for the car accident was not attached by the two negligent driving acts, but only by the actual collision. *See* 332 S.E.2d at 644–45. Here, liability was not attached by the negligent supervision by BCA but two sexual assaults by the two separate actors. This reasoning is congruent with the reasoning in *Kosnoski*, where liability attached when the gas actually leaked from the boiler furnace and not before simply because there was negligent maintenance, and *Hollis v. Lexington Insurance Co.*, which Brotherhood Mutual cites, where liability attached when the fireworks explosion occurred and not when there were negligent acts committed before. *See* No. 13-0494, 2014 WL 629343, at *1 (W. Va. Feb. 18, 2014); *see also* No. 16-1533, 2017 WL 1076706, at *1 (4th Cir. Mar. 22, 2017). In addition, as noted in *H.E. Butt Grocery Co.*, there would be no injury but for the underlying sexual assaults. *See* 150 F.3d at 258 (citing *Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86 (5th Cir. 1993)).

Furthermore, the Brotherhood Mutual insurance policy states the following regarding what sexual abuse would constitute a single occurrence:

> Any of the above acts or conduct will be considered a single sexual act if undertaken by the same perpetrator or perpetrators, even if such acts are directed against more than one person, happen over time, or take place during more than one policy period.

(ECF No. 32-3 at 80.)   Here, as stated above, the sexual abuse to A.B. and K.R.L. was not undertaken by the same perpetrator or perpetrators.   It is not alleged that A.B.'s and K.R.L.'s abusers were in concert with each other.   Thus, following the plain meaning of the policy, there are clearly two occurrences here.

Lastly, if this Court were to follow Brotherhood Mutual's line of reasoning, then any injuries that occurred at BCA would constitute a singular occurrence under the umbrella of negligent supervision by BCA.   The Fifth Circuit illustrated this point in *U.E. Texas One-Barrington, Ltd. v. General Star Indemnity. Co.*, stating as follows:

> To point to the installation of the pipes as the single event which gave rise to the damage to the nineteen buildings proves too much.   Of course it is true that had the plumbing system never been installed the leaks would not have occurred.   In this sense, it is true that the leaks which independently damaged the nineteen buildings arose from the same event.   However, to look this far back would render any damage to the complex occurring at any time related to the plumbing as arising from the same event.

332 F.3d 274, 278 (5th Cir. 2003).

However, each subsequent instance of sexual abuse by one perpetrator against one child falls under the same occurrence as the first instance of sexual abuse.   *See H.E. Butt Grocery Co.*, 150 F.3d at 533 ("[T]he conclusion that multiple molestations of the same child is only one occurrence is easily distinguishable from the conclusion regarding separate acts of molestation of different children. Where an employee repeatedly molests the same child, each new act of abuse

does not necessarily give rise to new liability for the employer."). This is consistent with the instant policy provision defining occurrence which states that "[i]f an occurrence to which any liability coverage of this policy applies consists of acts . . . occurring on more than one date during any policy period or policy periods, such events or damage, together with any related loss, will constitute a single occurrence." (ECF No. 32-3 at 100.) Thus, this Court finds that the recurring sexual abuse of A.B. counts as one occurrence and the recurring sexual abuse of K.R.L. constitutes a second occurrence.

2. Physical Abuse Claims

A.B. and K.R.L. also allege physical abuse in their complaints, both stating that "BCA subjected [them] to malnourishment, isolation, corporal punishment, starvation and physical abuse." (ECF Nos 75-3 at ¶ 23; ECF No. 75-4 at ¶ 22.) Defendants further allege that this physical abuse was at the hands of J.R. Waldeck[4], "who was improperly supervised by James Waldeck and improperly hired by Bible Baptist Church." (*See* ECF No. 82 at 2–3.)

Defendants argue that the physical abuse suffered by each boy is a separate occurrence because it is not alleged to have occurred as part of the sexual abuse or malnutrition and the proximate cause for each allegation is different. (*See* ECF Nos. 76 at 9, 11; ECF No. 82 at 3–4.) Brotherhood Mutual maintains its argument that the physical abuse allegations are part of a singular occurrence encompassing all of Defendants' claims because they constitute "repeated exposure" to the similar condition of BCA's negligence. (*See* ECF No. 80 at 9.)

Few courts have addressed whether, when alleged together, physical abuse and sexual abuse constitute two separate occurrences. In answering this question, the courts have looked at

---

[4] Although Plaintiffs name J.R. Waldeck as a perpetrator of the abuse in the underlying state actions, he is not a defendant in the state actions nor this action and is not to be confused with Defendant James Waldeck.

whether the injuries alleged from physical abuse were logically severable from the sexual abuse claims.  The Court of Appeals of Texas addressed this question in *TIG Insurance v. San Antonio YMCA*.  *See* 172 S.W.3d 652 (Tex. App. 2005).  That case involved claims of physical and sexual abuse by a camp counselor.  *See id.* at 655, 663 ("'[T]he child was physically, sexually, and mentally abused' by a YMCA employee and 'the minor child suffered physical abuse . . . .'").  The court concluded that the physical abuse allegations suggested that they were unassociated with the sexual abuse allegations and thus the claims constituted a possible cause of action outside of the sexual abuse cause of action.  *See id.* at 663.

Citing the Court of Appeals of Texas decision, in *TIG Insurance v. Merryland Childcare & Development Center*, the Western District of Tennessee faced the question of whether injuries characterized as stemming from physical assault were separate from injuries claimed for sexual abuse so that they fell outside of an insurance policy's sexual abuse exclusions.  *See* No. 04-2666, 2007 WL 316571 at, *7–8 (W.D. Tenn. Jan. 21, 2007).  There, the court found that, despite alleging physical abuse and sexual abuse separately, because the child's injuries all stemmed from the sexual abuse and could not "be logically extricated therefrom," the physical abuse claims were not separate from the sexual abuse claims.  *See id.*; *see also Peerless Ins. Co. v. K.F.H.*, No. 2:15-cv-00104, 2015 WL 5992112 at, *5 (D. Me. Oct. 15, 2015) ("To the extent that K.F.H. was harmed by Vrooman's verbal communications to K.F.H. made to facilitate and perpetuate his sexual abuse of her, such harm was connected with and incident to the sexual molestation that K.F.H. suffered.") (discussing whether an insurance policy's exclusion of coverage for injuries arising out of sexual molestation included verbal abuse suffered by the victim).

15

Lastly, the Eleventh Circuit addressed this issue in a case involving physical injuries stemming from physical assault accompanying rape. *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317 (11th Cir. 2005) [hereinafter *Guideone*]. In *Guideone*, the court held that the assault and battery of the victim and each of her children was sufficiently separated from the rape of the victim. *See id.* at 1332 ("[T]he rape of the Victim is one occurrence; the robbery is another; the kidnapping of the Victim and her children is another; and each act of assault and battery upon the Victim and each of her children, is another.")

Here, the event that triggered liability for the physical abuse claims was J.R. Waldeck's first act of physical abuse, not BCA's general negligence. *See* 332 S.E.2d at 644–45. Furthermore, similar to *TIG Insurance v. San Antonio YMCA*, the physical assault allegations are separate from the sexual abuse, malnutrition, and educational neglect claims and allege a different perpetrator than the sexual abuse and educational neglect claims. (*See* ECF No. 75-3 at ¶ 23; ECF No. 75-4 at ¶¶ 22, 24; ECF No. 82 at 2.) Thus, the trigger for the physical abuse claims is separate from the other claims, constituting a finding that the physical abuse claims are a separate occurrence.

However, contrary to the sexual abuse claims, the physical abuse of A.B. and K.R.L. together constitute a singular occurrence. The physical abuse claims are more akin to *Kosnoski* and *Shamblin* in that the physical abuse claims were triggered by a singular source: J.R. Waldeck's abusive behavior, whereas the sexual abuse claims were triggered by two, unrelated perpetrators. The commencement of J.R. Waldeck's abusive behavior attached liability to BCA for physical abuse. Any child exposed to J.R. Waldeck's abusive behavior can be said to have been exposed to "similar conditions" and trace back his or her injury to that initial trigger, thus

16

encompassing the later abuse into the same occurrence as the initial abuse. (*See* ECF No. 32-2 at 77.) This reading of "occurrence" is also congruent with Brotherhood Mutual's policy definition that a "related loss" is a loss "arising directly or indirectly out of or in connection with . . . the same related acts, incidents, events, or breaches of duty" and the policy's provisions stating that sexual abuse and discriminatory acts, "undertaken by the same perpetrator or perpetrators, even if such acts are directed against more than one person, happening over time" constitute a single occurrence. (*See id.* at 79, 80.)

Lastly, once liability for the physical abuse was attached any further instances of physical abuse were encompassed in that initial occurrence. *See H.E. Butt Grocery Co.*, 150 F.3d at 533. (*See also* ECF No. 32-3 at 100.) Thus, this Court rejects Brotherhood Mutual's argument that the physical abuse claims arise out of the same conditions as the other claims and finds that the physical abuse against A.B. and K.R.L. constitute one occurrence separate from the other occurrences.

### 3. Malnutrition Claims

In their state court complaints, A.B. and K.R.L. further allege that they suffered malnutrition due to "J.R. Waldeck and Blue Creek Academy staff's failure to feed them as well as Bible Baptist Church's policies and James Waldeck's failure to supervise that allowed these boys to be malnourished." (ECF No. 82 at 2–3.) Thus, A.B.'s and K.R.L.'s malnutrition allegations name the same perpetrators.

Defendants advance their same argument above that the malnutrition claims constitute a separate occurrence from the other claims. (*See* ECF No. 76 at 9.) Brotherhood Mutual also

advances its same argument stated above that the malnutrition claims are part of the same occurrence.   (*See* ECF No. 80 at 9; ECF No. 82 at 3–4.)

Here, the "resulting event for which the insured [became] liable" for the malnutrition was the failure to feed A.B. and K.R.L.   *See Shamblin*, 332 S.E.2d at 644.   Thus, this resulting event is different than the resulting events that attached liability for the sexual abuse, physical abuse, and educational neglect claims.   Furthermore, it does not appear that Defendants allege that this malnutrition occurred as part of the sexual abuse or physical abuse.   Therefore, the malnutrition claims constitute a separate occurrence from the other claims.

The same reasoning as to why A.B.'s and K.R.L.'s physical abuse claims constitute one occurrence applies here.   As stated above, the trigger for both A.B.'s and K.R.L.'s malnutrition claims are the same:   J.R. Waldeck's and BCA's withholding of food from A.B. and K.R.L. (*See* ECF No. 82 at 2–3.)   As the trigger is the same for both claims, there is only one occurrence between the two claims.   *See Shamblin*, 332 S.E.2d at 644.   This is also congruent with the insurance policy's definition of "related loss" discussed above.   (*See* ECF No. 32-3 at 79.)

Thus, this Court finds that A.B. and K.R.L.'s malnutrition claims constitute a singular separate occurrence from the other claims.

4.   <u>Educational Neglect Claims</u>

Lastly, A.B. and K.R.L. both allege that BCA committed "educational neglect" by failing to provide them adequate education.   (*See* ECF No. 75-3 at ¶ 30; ECF No. 75-4 at ¶ 27; ECF No. 76 at 9.)   Brotherhood Mutual maintains its argument that this claim is part of a single occurrence that envelopes all of A.B.'s and K.R.L.'s claims because all of the claims were

18

"caused by continuous or repeated exposure to substantially the same general harmful conditions." (*See* ECF No. 80 at 9.) Defendants argue that the allegations of educational neglect were triggered by a completely different event than any of the other allegations. (*See* ECF No. 76 at 9.)

The claim of educational neglect is analogous to other claims of injuries due to harmful policies. The Third Circuit, in addressing whether multiple injuries stemming from a company's discriminatory employment policies constituted a single or multiple occurrences, stated the following:

> The injuries for which Liberty was liable all resulted from a common source: Liberty's discriminatory employment policies. Therefore, the single occurrence, for purposes of policy coverage, should be defined as Liberty's adoption of its discriminatory employment policies in 1965.
>
> The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a single occurrence. *Champion Int'l. Corp. v. Cont'l Cas. Co.*, 546 F.2d 502, 505-506 (2d Cir. 1976), *cert. denied*, 434 U.S. 819 (1977).

*Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982). There, the insurance policy's definition of occurrence was similar to the one in the present case. *Id.* at n.8 ("[A]n accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.")

This reasoning is similar to the "single source" reasoning of the Supreme Court of Appeals of West Virginia in *Kosnoski* described above. *See* 2014 WL 629343, at *3. There the court stated the following:

> It is clear from the record that there was a leak of carbon monoxide from a single source, the gas boiler furnace. While the gas undoubtedly traveled to different rooms within the single building at different times over several hours, the injuries to petitioners and the decedent were from continuous or repeated exposure to substantially the same general harmful conditions. . . . Therefore, we find that under the facts presented in this case, there was a single occurrence under the policy at issue.

*Id.*

Here, the educational neglect allegations are similar to the discriminatory employment policy in *Appalachian* and the gas leak in *Kosnoski* in that they stem from a single source: namely, BCA's inadequate education as a result of an improperly chosen curriculum. (*See* ECF No. 82 at 3–4.) Following the reasoning in *Shamblin* discussed more fully above, BCA's providing of inadequate education is the "resulting event" that triggered liability. *See* 332 S.E.2d at 644. The simple fact that BCA was neglectful generally does not mean that every incident occurring while BCA was neglectful can be said to have been triggered by that general neglect. *See id.* ("[T]here may or may not have been two antecedent negligent acts but there was only one resulting 'occurrence,' the event from which liability arises . . . .").

Furthermore, this trigger of liability for the educational neglect claims is different from the events that triggered liability for the sexual abuse, physical abuse, and malnutrition claims. A claim of educational neglect constitutes a distinctly different tort than claims of sexual abuse, physical abuse, or malnutrition. Thus, it cannot be said that educational neglect is a similar condition to the other claims. The boys were only "continually exposed to similar conditions" after BCA began providing inadequate education. (*See* ECF No. 32-3 at 100) ("If an

occurrence to which any liability coverage of this policy applies consists of acts, errors, omissions, decisions, incidents, events, breaches of duty, damage or loss occurring on more than one date during any policy period or policy periods, such events or damage, together with any related loss, will constitute a single occurrence.").)

Therefore, this Court finds that A.B.'s and K.R.L.'s educational neglect claims constitute a singular occurrence under the Brotherhood Mutual policy, separate from their sexual abuse, physical abuse, and malnutrition claims.

## IV.     CONCLUSION

In accordance with the foregoing discussion, the Court **FINDS** that the sexual abuse, physical abuse, malnutrition, and educational neglect claims constitute five (5) occurrences under the Brotherhood Mutual Insurance Policy and that the Brotherhood Mutual policy provides at least $2,000,000 of coverage for A.B. and K.R.L.'s claims.   Brotherhood Mutual's Motion for Summary Judgment is **DENIED**.   (ECF No. 80.)   Defendants' Motions for Summary Judgment are **GRANTED**.    (ECF Nos. 73, 75.)

A separate judgment order will be entered implementing the Court's findings.   The Clerk is **DIRECTED** to remove this action from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    December 7, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE